[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12171
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-02011-JA-DCI

WILLIE PALMER,

Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 15, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Willie Palmer, a Florida state prisoner, appeals the district court's denial of his *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from his conviction for robbery with a deadly weapon.[1] Palmer, who is now represented by counsel, argues that his trial counsel was ineffective for failing to request a special jury instruction on Palmer's defense that he abandoned the theft before displaying a weapon. The district court denied Palmer's petition after concluding that there was no evidence supporting an abandonment instruction, and therefore, he failed to show his counsel's performance was deficient and prejudiced his defense. We affirm.

## I.

Palmer was charged with robbery with a deadly weapon and grand theft of more than $300 but less than $20,000. At trial, the state explained in its opening statement that on November 28, 2011, Palmer entered a Walmart store and began filling a cart with various household items. After filling the cart, Palmer moved to leave the store, walking past the checkout stands without paying for the items in the cart. Mercy Morgan, a Walmart loss prevention officer, called 911, approached

---

[1] "'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). "If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in § 775.082, § 775.083, or § 775.084." Fla. Stat. § 812.13(2)(a).

Palmer, asked him to come with her, and radioed David Fournier, another Walmart employee. Palmer did not comply with Morgan's request to come with her and "walk[ed] away from the cart," trying to get out of the store. Fournier then confronted him. Palmer became "aggressive" and tried to get around Fournier. Morgan then saw Palmer reach into his pocket and pull out what she believed to be a small pocketknife. Morgan yelled "knife." Palmer then told Fournier that he "better move," and Fournier backed away to let Palmer pass. Palmer left the store without the shopping cart or the merchandise inside it.

Palmer's counsel stated in his opening statement that "[t]his is not an armed robbery case or a Robbery with a Deadly Weapon case. This is shoplifting." He argued that, once Morgan approached, Palmer "immediately abandoned everything he [had]" by leaving the shopping cart and attempting to walk away. Counsel maintained that Palmer had stolen the items in the shopping cart by deception, not by force. Palmer's counsel also stated that the Walmart surveillance video would show that Palmer did not have a knife in his hand, did not make any physical contact with Morgan or Fournier, and did not make any gestures with his hands.

Morgan testified that when she approached Palmer, he was "really angry," refused to go with her, and tried to side-step her and Fournier. She stated that as she and Fournier were trying to get Palmer to go back into the main area of the store, she looked down and saw a black item with silver around it that looked like a

3

knife in Palmer's hand. She then told the 911 dispatcher that she thought Palmer had a knife, and the dispatcher told her to back off. Morgan said that Palmer held the knife as if to warn them that he had it but that he did not point it at anyone and the blade of the knife was not out. Morgan and Fournier then stepped out of Palmer's way, and he left the store without the cart or any of the items in it. On cross-examination, Morgan stated that Palmer had not abandoned the merchandise when she first approached him and still "had a hold of the cart" when Morgan asked him to come with her. She then said that Palmer abandoned the cart "at one point" before he left the store.

Fournier's testimony generally aligned with Morgan's. Fournier stated that he held on to Palmer's cart and told him to go with Morgan while attempting to prevent Palmer from leaving. He testified that he heard Morgan shout "knife," heard Palmer tell him "you better move," and saw Palmer holding a black folding knife. Fournier confirmed it was at that point he let Palmer go and that everything happened very quickly. During cross-examination, Palmer's counsel played the Walmart surveillance video and Fournier indicated the point at which Palmer still had his hand on the cart and the point at which he had abandoned the cart.

After the close of evidence, Palmer moved for judgment of acquittal, arguing that he could not be convicted of robbery because he did not use the knife "in the course of committing the theft" since he abandoned the property before he showed

4

the knife. The court denied Palmer's motion, concluding that the jury could find that the total incident, which lasted "60 or 90 seconds," was "one continuous series of events without any break." If so, the jury could conclude that he had committed robbery if the jury determined his flight and showing of the weapon were "contemporaneous with the act." The parties discussed with the judge the proposed jury instructions—which included the elements of robbery but no language on abandonment—and Palmer's counsel did not object to the instructions. The jury found Palmer guilty of robbery with a deadly weapon and theft of at least $300 worth of property. On direct appeal, Florida's Fifth District Court of Appeal summarily affirmed.

Palmer then moved the Eighteenth Judicial Circuit for post-conviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure, alleging five grounds for relief. In relevant part, Palmer's *pro se* petition argued that his trial counsel was ineffective for failing to request a special jury instruction on abandonment because his alleged use of force occurred after he abandoned the cart. He also stated that the video surveillance would show that he did not use the knife and that he abandoned the shopping cart. The court denied Palmer's 3.850 motion, finding that Palmer "passed all points of sale with the shopping cart, then he displayed the knife, and then he left the store without the merchandise." Because the evidence did not support an instruction on abandonment, Palmer did not therefore receive

5

ineffective assistance of counsel. The Fifth District Court of Appeal summarily affirmed.

Palmer then filed a *pro se* petition under 28 U.S.C. § 2254 in the district court.[2] As in his 3.850 motion, Palmer argued that his counsel provided ineffective assistance by failing to request a jury instruction on abandonment, among other claims. The § 2254 petition did not, however, make any argument concerning the evidence on the Walmart surveillance video. The district court denied Palmer's § 2254 petition. In relevant part, the district court explained that the evidence did not indicate any break in the chain of events because "the theft, threat, and attempted use of force constituted a continuous series of acts or events." Palmer's counsel thus was not deficient in failing to request an abandonment instruction to which he was not entitled, and such failure did not result in prejudice. The court also concluded that the state court's denial of relief was neither contrary to, nor an unreasonable application of, clearly established federal law. Palmer timely filed an

---

[2] Pursuant to § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may grant habeas relief on claims previously adjudicated in state court only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

appeal, and this Court granted a certificate of appealability ("COA") on the following issue:

> Whether the state court's denial of Palmer's claim of ineffective assistance of trial counsel for failure to request a special jury instruction on abandonment was based on an unreasonable determination of facts, where the state court determined that counsel's performance was not deficient because the trial evidence did not support a special instruction on abandonment.

We then appointed counsel to represent Palmer and brief this appeal.

## II.

When reviewing the district court's denial of a writ of habeas corpus under § 2254, we review mixed questions of law and fact, including claims of ineffective assistance of counsel, *de novo*, and review findings of fact for clear error. *Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1098 (11th Cir. 2009).

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel. U.S. Const. amend. VI. To succeed on an ineffective assistance claim, the movant must show: (1) that the attorney made errors so serious that he ceased to function as the counsel that the Sixth Amendment guarantees; and (2) that the errors prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court's review of an attorney's performance is highly deferential, and it must employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A habeas petitioner claiming ineffective assistance of

7

counsel bears the burden of proof and must prove both prongs of the *Strickland* test. *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001).

Under AEDPA, a habeas petitioner raising ineffective assistance of counsel must establish not only that his counsel was ineffective, but also that the state court's application of *Strickland* in concluding otherwise was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). Our review under § 2254 of a state court's decision denying an ineffective assistance claim is thus "doubly" deferential. *Id.* This Court will affirm the denial of relief if "there is any reasonable argument that counsel" acted pursuant to prevailing professional standards. *See id.* Only in a "rare case" will an ineffective assistance claim denied on the merits in state court warrant relief in a federal habeas proceeding. *Johnson v. Sec'y, DOC*, 643 F.3d 907, 911 (11th Cir. 2011).

## III.

Palmer's claim concerns his counsel's failure to request a special jury instruction. Under Florida law, a defendant is entitled to a special jury instruction if (1) the instruction is supported by the evidence; (2) the standard instruction does not adequately cover the theory of defense; and (3) the instruction is a correct statement of the law and not misleading or confusing. *Peterson v. State*, 24 So. 3d 686, 689 (Fla. 2d Dist. Ct. App. 2009).

8

Florida courts have recognized that providing the jury with an instruction on abandonment is appropriate in robbery cases when supported by the evidence. *See id.* at 690. "Robbery" is defined as taking property with the intent to either permanently or temporarily derive the owner of the property, when "in the course of the taking there is the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1). "An act shall be deemed 'in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts of events." *Id.* § 812.13(3)(a), (3)(b). Put simply, a defendant is not guilty of robbery if he abandoned the stolen property before using force to flee. *See Rockmore v. State*, 140 So. 3d 979, 982–83 (Fla. 2014). Accordingly, Florida courts have recognized that a special instruction on abandonment is appropriate in a robbery case only if there is some evidence that the defendant "abandoned the property and thus broke the chain between the taking and the use of force." *Id.* at 984.[3] There must be "evidence that it was the thief who abandoned the property and thus broke the chain." *Id.*[4] However, if the "theft and threatened use of force constituted a

---

[3] For example, the instruction the court endorsed in *Peterson* read, "[i]f it is established that the property was abandoned prior to the use of force then you must find the Defendant not guilty of robbery." 24 So. 3d at 689.

[4] The state of Florida suggests that Florida courts thus distinguish between voluntary and involuntary abandonment. Because we find that the state court reasonably determined there was no evidence of abandonment here, we need not decide this issue.

9

continuous series of acts or events under Florida's robbery statute" as a matter of fact, the abandonment defense does not apply as a matter of law. *Id.*

Our review in a habeas appeal is limited to the issues specified in the COA. *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004). Accordingly, we only assess whether the state court's decision to deny Palmer's petition was based on an unreasonable determination of the facts: that is, whether the trial evidence supported, as a matter of fact, the special instruction on abandonment.[5] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance," and "evidence that may plausibly be read as inconsistent with the finding" may still not establish that the finding was unreasonable. *Wood v. Allen*, 558 U.S. 290, 301, 302–03 (2010).

The state court denied Palmer's Rule 3.850 motion after it found that the trial evidence showed that Palmer "passed all points of sale with the shopping cart, then he displayed the knife, and then he left the store without the merchandise." We conclude that this finding was not an unreasonable determination of the facts, as it is consistent with the testimony of both Morgan and Fournier. Although

---

[5] The Florida Fifth District Court of Appeal summarily affirmed the trial court's decision that Palmer was not entitled to post-conviction relief under Rule 3.850. When a state appellate court does not explain its decision to affirm the trial court, we "look through" that decision to the last reasoned decision and presume that the unexplained decision adopted the reasoning in the decision by the lower state court. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). We thus look to the reasoning of the Eighteenth Judicial Circuit's opinion.

Palmer argues that "[Morgan] testified, on one hand, that Mr. Palmer had not abandoned the merchandise, but, on the other hand she conceded that he had abandoned the stolen goods prior to fleeing the store," Morgan's testimony does not establish that that Palmer abandoned the merchandise before showing her the knife. Her testimony that he abandoned the cart "at one point" before leaving the store, although ambiguous, is reasonably read to mean that he abandoned the cart shortly before leaving. Further, on cross-examination, Morgan responded "no" when asked if Palmer had abandoned the merchandise upon her confronting him. Similarly, Fournier testified that Palmer did not abandon the cart when he initially approached him and that he saw the knife while he and Morgan were still walking with Palmer in the store.[6] Based on this testimony, the state court's finding was reasonable.

Palmer further argues that the Walmart surveillance video "clearly showed that [he] abandoned the merchandise before he threatened security personnel." Although Palmer raised this argument before the state court, he did not raise it before the district court, and the district court did not have an opportunity to view the video and consider this argument. "[I]ssues not raised in the district court in the

---

[6] Palmer correctly points out, however, that the state court misstated his argument by stating that he "claim[ed that] he abandoned the merchandise after he displayed the knife" because he instead argued that he abandoned the cart immediately after Morgan and Fournier approached him. But it is clear that the state court did not rely on Palmer's argument in reaching its decision; it instead relied on the evidence of Morgan and Fournier's testimony.

11

first instance are forfeited." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1150 (11th Cir. 2017) (quoting *Maradiaga v. United States*, 679 F.3d 1286, 1293 (11th Cir. 2012)). Accordingly, Palmer forfeited any argument that the surveillance video provides evidence of abandonment by not raising that argument before the district court.[7]

In sum, the state court's decision that Palmer failed to show ineffective assistance of counsel was not based on an unreasonable determination of the facts. Morgan and Fournier's testimony do not provide evidence that Palmer abandoned the shopping cart before displaying a knife such that the chain between the taking and the use of force was broken. Accordingly, we affirm the district court's denial of Palmer's § 2254 petition for habeas relief.

**AFFIRMED.**

---

[7] Palmer also argues that his counsel's actions could not have been the result of reasonable trial strategy because his counsel argued the defense of abandonment throughout trial. This argument exceeds the scope of the COA because it concerns whether the state court's decision was an unreasonable application of federal law, not whether the state court's decision was based on an unreasonable determination of facts. Accordingly, we do not consider it. *See Diaz*, 362 F.3d at 702.